FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 08, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TIMOTHY LYNN C.,

                         Plaintiff,

   v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                     Defendant.

NO:  1:18-CV-3143-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 11, 13.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).

represented by Special Assistant United States Attorney Joseph J. Langkamer. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 11, is granted and Defendant's Motion, ECF No. 13, is denied.

## JURISDICTION

Plaintiff Timothy Lynn C.[2] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on May 6, 2013, alleging an onset date of January 7, 2008. Tr. 19, 162-63, 792-94. Benefits were denied initially, Tr. 110-13, and upon reconsideration, Tr. 115-17. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 8, 2018. Tr. 38-79. On September 27, 2013, the ALJ issued an unfavorable decision, Tr. 19-31, and on April 9, 2015, the Appeals Council denied review. Tr. 1-4. Plaintiff filed a complaint in the U.S. District Court for the Eastern District of Washington and on June 20, 2016, Magistrate Judge Mary K. Dimke issued an order granting a stipulated motion for remand. Tr. 662-64.

Plaintiff appeared at a second hearing on March 8, 2018. Tr. 61-31. On April 19, 2018, the ALJ issued another unfavorable decision. Tr.533-49. The Appeals

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

Council did not assume jurisdiction and the ALJ's decision became the final decision of the Commissioner after remand. 20 C.F.R. §§ 404.984(a), (d); 416.1484(a), (d). The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1972 and was 45 years old at the time of the second hearing. Tr. 611. He has a GED. Tr. 614. He has work experience as a tow truck driver, operating a mobile shower unit for disasters and fires, and as head of maintenance for an egg farm. Tr. 693, 696-98. He has a commercial driver's license, although the medical card was expired at the time of the second hearing. Tr. 693. Plaintiff testified that the impairment that causes the most problem with working a full-time job is migraine headaches. Tr. 623. When he has a bad migraine, light hurts his eyes, he vomits easily, and he would have to call in sick to work. Tr. 622-23.

Additionally, he injured his back at work in 2002. Tr. 709. He eventually returned to work, but in 2007 his right arm was injured on the job. Tr. 710. The back pain has steadily gotten worse over time. Tr. 711. He experiences sciatic nerve pain down his left leg. Tr. 710. He has to plan his days around his pain. Tr.

712.  If he takes too much pain medication, he ends up with a migraine.  Tr. 712-13.

He spends a lot of days lying down.  Tr. 713.  He cannot stay in one position for

very long.  Tr. 714.  Driving long distances aggravates his pain.  Tr. 715.  His pain

medication makes him carsick and "crabby" and he does not like taking it.  Tr. 716.

His arm injury caused him to lose 40 percent of the grip in his right hand.  Tr. 716.

He drops things frequently and he alleges that his condition limits his ability to

write.  Tr. 716-17.  He testified that he would love to be able to go back to work.  Tr.

722.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and

citation omitted).  Stated differently, substantial evidence equates to "more than a

mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must

consider the entire record as a whole rather than searching for supporting evidence in

isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe

than one of the enumerated impairments, the Commissioner must find the claimant

disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the

claimant is capable of performing past relevant work, the Commissioner must find

that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the

claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this

determination, the Commissioner must also consider vocational factors such as the

claimant's age, education and past work experience. 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 7, 2008, the alleged onset date. Tr. 535. At step two, the ALJ found that Plaintiff has the following severe impairments: disorder of the muscle and ligaments, elbow pain, and low back pain. Tr. 535. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 538.

The ALJ then found that Plaintiff has the residual functional capacity to perform medium work with the following additional limitations:

> The claimant could frequently lift and/or carry up to 20 pounds and occasionally lift and/or carry up to 50 pounds. The claimant could sit, stand and walk for 6 hours each total in an 8-hour workday no more than 4 hours at a time. The claimant does not require the use of a cane

to ambulate. The claimant could frequently reach, handle, finger, feel and push/pull with the dominant right hand. The claimant could frequently balance and climb stairs and ramps and occasionally crawl, crouch, kneel, stoop and climb ladders, ropes and scaffolds. The claimant could frequently be exposed to hazards, humidity and wetness, respiratory irritants, vibration and temperature extremes.

Tr. 539.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as an egg farmer. Tr. 547. Alternatively, at step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform such as janitor, laundry worker, or cleaner. Tr. 547-48. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 7, 2008, through the date of the decision. Tr. 549.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 11. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated Plaintiff's symptom claims;

2.    Whether the ALJ properly considered the medical opinion evidence; and

3.     Whether the ALJ properly determined Plaintiff's headaches are nonsevere at step two.

ECF No. 11 at 12-21.

## DISCUSSION

**A.     Symptom Claims**

Plaintiff contends the ALJ improperly rejected his symptom claims.  ECF No. 11 at 14-17.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms less than fully persuasive. Tr. 540.

First, the ALJ found Plaintiff's complaints are not reasonably consistent with the medical evidence. Tr. 540-41. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Contrary to Plaintiff's assertion that "[t]his is not a valid reason," ECF No. 11 at 15, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ discussed the medical record in detail. Tr. 540-41. For example, Plaintiff's right arm was injured in January 2008. Tr. 258. By November 2008, the contusion was resolved and although Plaintiff complained of chronic forearm and hand numbness, no further neurologic or orthopedic treatment was advised. Tr. 221. An exam showed full strength and range of motion without point tenderness in the wrist and elbow. Tr. 223. After using his arm heavily and complaining of pain in March 2009, Tr. 262, he ultimately had surgery in May 2009, Tr. 263, resulting in significantly less pain by July 2009. Tr. 261. By January 2012, it was determined that maximum medical improvement had occurred and no further curative measures were indicated. Tr. 393. A nerve conduction study did not explain Plaintiff's complaints of pain and it was noted that a compression sleeve allowed Plaintiff to tolerate greater activity. Tr. 393 (can tolerate greater amounts of activity with compression sleeve), 396 ("benefits

greatly" from compression sleeve), 435 (compression sleeve provides "great improvement in his activity tolerance"), 445 (compression sleeve "very beneficial").

Plaintiff asserts that he continued to complain to doctors that he had trouble holding onto objects with his right hand, even with the compression sleeve. ECF No. 11 at 16 (citing Tr. 445-46). However, this does not negate the ALJ's observations regarding the above findings, nor does it diminish the ALJ's overall conclusion based additionally upon unremarkable EMG testing of Plaintiff's right arm; an MRI of the right arm revealing only minor changes; a negative x-ray of the forearm and elbow; and a normal right hand radiograph . Tr. 219, 221, 226, 240-44, 386, 498, 539.

With regard to Plaintiff's low back and neck pain, the ALJ noted that in June 2008, Plaintiff denied any gait changes or upper or lower extremity numbness. Tr. 274, 541. In March 2009, Plaintiff denied neck pain and had full range of motion in his neck. Tr. 262, 541. In January 2011, Plaintiff complained his back pain had gradually worsened over the last year and he had lumbar spine pain radiating down his left leg. Tr. 371, 373. In May 2011, he underwent lumbar surgery and shortly thereafter, the leg pain was gone. Tr. 366, 379, 541. On exam, he had normal gait, strength was 5/5, sensation was normal, and muscle tone and bulk were normal. Tr. 365-66, 373541.

In November 2012, Plaintiff was diagnosed with closed fractures of his lumbar vertebrae L1, L2, and L3 after slipping and falling on a wet deck while trying to build a shed. Tr. 541, 868-69, 871, 958. In 2013 and 2014, Plaintiff reported engaging in activities such as working on a motorcycle, welding, working on cars, working in his shop, weeding his lawn, and cutting wood. Tr. 542-43, 927-28, 932, 934, 940-41, 943, 948-949. While establishing care with Christopher Faison, M.D., in May 2015, Plaintiff was noted to have long-standing chronic pain. Tr. 541, 838. By August 2015, Dr. Faison described Plaintiff's chronic back pain as "well controlled and functional" with medication. Tr. 541, 847. Exam findings in January 2016 reflected full bilateral upper and lower extremity strength, normal gait, negative Romberg, intact sensation in the extremities, and reduced proprioception of the left toe. Tr. 541, 876-77. In October 2017, Plaintiff appeared at the emergency department for pain and left arm radiculopathy after lifting a 300-pound object. Tr. 541, 907. He had normal sensory and motor abilities on exam. Tr.541, 909. He was diagnosed with a cervicothoracic pain with radiation which improved after a steroid injection and lidocaine. Tr. 541, 909.

Plaintiff asserts that "medical records indicate that his pain continued to flare at times even after surgery." ECF No. 11 at 16. The ALJ did not find that Plaintiff had no back pain after surgery. Indeed, the ALJ acknowledges Plaintiff experiences chronic pain. Tr. 541 (citing Tr. 847). However, based on the

foregoing, the ALJ reasonably concluded that Plaintiff's symptom complaints exceed the findings in the medical record.

Second, the ALJ that Plaintiff was released to work several times after the alleged onset date. Tr. 541-42. A medical opinion indicating the claimant can perform a limited range of work may undermine a claim of disabling limitations. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995). The ALJ noted that in May 2008, shortly after the alleged onset date, treating physician Christopher Vantilburg, M.D., stated that getting back to work would be helpful and released him to light work. Tr. 227, 234. In July 2008, Dr. Vantilburg noted that Plaintiff "could probably drive a semi truck as he has been chopping wood at home on his days off." Tr. 229, 231 ("He cut a couple of cords of firewood"). Plaintiff told Dr. Vantilburg he was not working because light duty work was not available. Tr. 225, 233. In March 2009, Plaintiff's arm surgeon, Mark J. Buehler, M.D., sent him back to normal work duties. Tr. 262. A few weeks later, Plaintiff returned to Dr. Buehler with swelling after using his arm heavily and Dr. Buehler restricted him to light duty work. Tr. 262. In July 2009, Dr. Buehler limited him to light duty, one-handed work, but by September 2009, he could do regular light duty work. Tr. 261. In November 2011, another treating physician, Bruce Kite, M.D., indicated Plaintiff could work at a job that did not require repetitive use of the right upper

extremity, such as security guard. Tr. 396. The ALJ reasonably found these instances indicate Plaintiff is capable of working[3] and this is a clear and convincing reason undermining Plaintiff's symptom claims. Tr. 542.

Third, the ALJ found Plaintiff's activities are inconsistent with the nature and severity of his subjective complaints. Tr. 542. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part

--------

[3] The ALJ noted that Plaintiff stated there were no light duty jobs available in his area and he indicated a desire to fight his claim to the end. Tr.72, 229, 542. These statements were reasonably considered by the ALJ in this context because they suggest nondisability reasons prevented Plaintiff from going back to work. *See* 20 C.F.R.§§ 404.1520(c), 416.920(c) (2011) ("We will determine you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of (1) Your inability to get work; (2) Lack of work in your local area; (3) The hiring practices of employers . . . (6) No job openings for you . . . (8) You do not wish to do a particular type of work.")

of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina,* 674 F.3d at 1113.

The ALJ cited numerous instances in the record indicating activities inconsistent with Plaintiff's alleged symptoms. Tr. 542. In 2008, Plaintiff was worked on his truck, took care of his seven-year-old son, played video games, cut cords of firewood, and chopped or sawed firewood. Tr. 542 (citing Tr. 228, 231, 233, 237). In November 2010 he used a chainsaw (Tr. 421); in December 2010 he built his own home exercise equipment (Tr. 445); in February 2011 he reported he changed the oil and did some welding on a tractor (Tr. 411); in July 2011 he reported walking on hiking trails to go fishing, although at the hearing he testified that he had stopped those activities in 2002 and 2007, respectively (Tr. 365, 618); in September 2011, Plaintiff drove a long distance to an appointment without assistance, moved into a new house and helped paint a room until his arm hurt (Tr. 398); in March 2012 he assisted a friend installing equipment on the rooftop of a truck, although his hand went numb while working with a screwdriver (Tr. 390); in May 2013 he fixed a broken water heater, worked on benches and motors, worked

on motorcycles with his son, and socialized (Tr. 948); in April 2014 he reported doing mechanical work on a motorcycle including welding (Tr. 934); in June 2014 he reported working on cars at his home (Tr. 931); in August 2014 Plaintiff reported working in his shop and using a weed eater (Tr. 930); in October 2014 Plaintiff reported he worked on a roof and helped a friend build a trailer despite medical advice to refrain from activities which would aggravate his back pain (Tr. 927); and in April 2017, he had a physical for a CDL license (Tr. 1139) and was licensed as a CDL operator at the time of the hearing (Tr. 614). The ALJ found that the foregoing activities "do not reflect the disabling limitations alleged by the claimant." Tr. 543.

Plaintiff argues the ALJ "fails to acknowledge [] that these activities frequently exacerbated [Plaintiff's] pain and were done against the advice of his medical providers." ECF No. 11 at 16 (citing Tr. 927). According to Plaintiff, this means that the activities should not be considered evidence that Plaintiff is capable of competitive employment. ECF No. 11 at 17. Plaintiff's argument misses the point. The ALJ found Plaintiff's symptom complaints are less persuasive because he engages in activities inconsistent with his claimed limitations. Tr. 540. For example, Plaintiff testified at the first hearing that he was unable to lift fifty pounds, Tr. 52, and at the second hearing that he has difficulty lifting things, Tr. 617, 620-21, yet in October 2017 he reported to the emergency room with neck pain and left arm radiculopathy after lifting a 300-pound object. Tr. 541, 907. It

was reasonable for the ALJ to give less weight to Plaintiff's symptom complaints since he engages in activities in excess of his claimed limitations and against medical advice.

Plaintiff also argues the ALJ should not have considered the length of time he rode in a car to attend a hearing or that he walked on hiking trails because those activities were qualified by his limitations. ECF No. 14 at 6. Even if the ALJ's consideration of those activities did not include certain details, the ALJ cited numerous other activities which reasonably undermine Plaintiff's allegations regarding his limitations. This is a clear and convincing reason for giving less weight to Plaintiff's symptom claims.

### B. Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly consider the opinion of treating provider Ilan Wilde, PA-C, and gave too much weight to the opinion of the medical expert, Eric Schmitter, M.D., and to the opinion of John Reichle, M.D. ECF No. 11 at 17-23.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's,

and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d),

416.913(d) (2013).[4]  The ALJ is required to consider evidence from "other sources," but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so."  *Molina*, 674 F.3d at 1104.

In August 2013, Mr. Wilde completed a residual physical functional capacity assessment questionnaire and indicated Plaintiff's medical conditions include chronic back, arm, and neck pain; fractures of L1, L2, and L3; and migraines.  Tr. 527-29.  Mr. Wilde noted Plaintiff's primary symptoms are back and arm pain.  Tr. 527.  He opined Plaintiff can frequently lift or carry up to 10 pounds; can stand or walk for 30 minutes at a time; can sit for 45 minutes at a time; can sit for two hours in an eight-hour workday; and would need to change positions frequently.  Tr. 528.  Mr. Wilde further indicated Plaintiff is limited in the upper and lower extremities for operating hand or foot controls; should never climb or crawl; and should only occasionally stoop or bend, kneel, crouch, reach overhead, or handle.  Tr. 528.  He noted that Plaintiff would be off task 20 percent of the time while at work and would

---

[4] Effective March 27, 2017, the definition of an "acceptable medical source" changed to include some sources previously considered to be "other" sources.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2017).  However, for licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants, the change applies "only with respect to claims filed . . . on or after March 27, 2017").  20 C.F.R. §§ 404.1502(a)(6)-(8), 416.902(a)(6)-(8) (2017).

miss 16 hours of work per month due to symptoms from his condition.  Tr. 529.  The ALJ gave no weight to Mr. Wilde's opinion.  Tr. 545.

As a physician's assistant, Mr. Wilde is an "other source" under the regulations.  20 C.F.R. §§ 404.1513, 416.913(d) (2013).  Thus, the ALJ was required to cite germane reasons for rejecting the opinion.  *See Molina*, 674 F.3d at 1104.

First, the ALJ found Mr. Wilde did not provide any objective support for the limitations he assessed.  Tr. 545.  An ALJ may discredit the opinion of a treating provider which is unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ noted that other examinations and imaging reflect greater functional capacity.  Tr. 545.  Based on the lack of objective findings, the ALJ presumed that Mr. Wilde relied on Plaintiff's subjective pain complaints.  Tr. 545.

Plaintiff contends Mr. Wilde's findings are supported by "extensive treatment notes and experience working with [Plaintiff]," yet points to no objective findings in Mr. Wilde's treatment notes that support the limitations assessed.  ECF No. 11 at 19.  The mere fact that treatment notes exist does not mean the opinion is supported by objective findings.  The Court notes that while Mr. Wilde found tenderness in Plaintiff's back upon examination, it was often paired with notes indicating Plaintiff was engaging in significant activities, for example:  he was experiencing more pain due to increasing amount of work including building a wood shed and riding a motorcycle "which he knows he should not do," Tr. 960; back spasms after holding

a flashlight for two hours, Tr. 961; marked tenderness of the back on exam, marked guarding, and straight leg raise was very painful, and Plaintiff reported he experienced increased back pain because he has been working on his son's new motorcycle and riding a motorcycle, Tr. 949; activity level was 8/10, including fixing a water heater, working on benches and motors, and working on motorcycles with no mention of back pain or examination and Plaintiff's left arm seemed better, Tr. 948; Plaintiff complained that his off and on pain was getting worse, but stated that "he had been overactive, trying to do things such as jump off a flat bed trucks [sic] and working on yards, including pulling weeds, etc.," Tr. 943; back tender to palpation but Mr. Wilde noted Plaintiff's activities included cutting and moving a cord of wood, working around the house and outside several times per week, Tr. 941; reported severe pain, but exam was benign except for tenderness at neck, shoulder and hip, and he continued to work on cars and cut wood in spite of the pain, Tr. 940; pain more severe but he helped a friend pull a truck out of the snow, Tr. 935.

Additionally, by April 2014, Mr. Wilde noted Plaintiff was "doing well," had an activity level of 10/10 and his exam revealed some muscle tenderness in the back and shoulder but was otherwise normal. Tr. 934. In May 2014, Plaintiff reported worsening of his lower back pain, but examination was benign except for diffuse tenderness. Tr. 932. In June 2014, shortly before Mr. Wilde's functional assessment, Mr. Wilde noted Plaintiff "has been doing well for quite a while" and

had been working on cars at his home frequently. Tr. 931. Examination of the back and shoulders reflected tenderness diffusely, but the remainder of the exam was benign. Tr. 931.

There is no basis to conclude that the various tenderness findings translate into the significant limitations assessed by Mr. Wilde, particularly in light of the fact that Plaintiff frequently reported engaging in activities in excess of those limitations. An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir.1999). Thus, the ALJ reasonably concluded that Mr. Wilde's limited functional assessment is not supported by objective findings. Tr. 545. Additionally, the ALJ found that other exams and imaging reflect a more functional work level. Tr. 545; *see supra.* This is a germane reason supported by substantial evidence.

Second, the ALJ found Mr. Wilde's opinion conflicts with the findings of the medical expert, Eric Schmitter, M.D. Tr. 545. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1927(c)(4), 416.927(c)(4) (2012) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Nguyen*, 100 F.3d at 1464. Eric Schmitter, M.D., reviewed the medical record, completed interrogatories, and opined that Plaintiff could frequently lift or carry up to 20 pounds and occasionally lift or carry up to 50 pounds; that Plaintiff can sit,

stand and walk for six hours each total in an eight-hour workday; can frequently

reach, handle, finger, feel, and push/pull with the right hand and no limitation in the

left hand; and is limited to occasionally climbing ladders or scaffolds, stooping,

kneeling, crouching, or crawling.  Tr. 830-33.  The ALJ gave great weight to Dr.

Schmitter's opinion.  Tr. 546.

Plaintiff contends the ALJ improperly gave weight to Dr. Schmitter's opinion

because Dr. Schmitter did not examine Plaintiff.  ECF No. 11 at 21.  The opinion of

a nonexamining physician may serve as substantial evidence if it is supported by

other evidence in the record and is consistent with it.  *Andrews v. Shalala*, 53 F.3d

1035, 1041 (9th Cir. 1995).  The opinion of an examining or treating physician may

be rejected based in part on the testimony of a non-examining medical advisor when

other reasons to reject the opinions of examining and treating physicians exist

independent of the non-examining doctor's opinion.  *Lester*, 81 F.3d at 831, citing

*Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory

test results, contrary reports from examining physicians and testimony from claimant

that conflicted with treating physician's opinion).

The ALJ noted Dr. Schmitter's opinion is consistent with the overall medical

record.  Tr. 546.  In particular, the ALJ cited imaging of Plaintiff's spine showing

moderate foraminal stenosis with no herniations or significant stenosis, Tr. 270, 281,

332, 371 385, 492-94; normal imaging of Plaintiff's left knee and right upper

extremity, Tr. 221, 226, 240-44, 386, 498; normal EMG testing, Tr. 219, 226, 498;

unremarkable physical examinations demonstrating no significant strength, sensory or reflex deficits or a severely unstable gait, Tr. 275 and *supra*; no surgical treatment recommended for Plaintiff's spine; and robust physical activities discussed *supra*. Tr. 538-41, 546. The ALJ cited evidence in addition to Dr. Schmitter's opinion which supports the weight assigned to it. Thus, the ALJ reasonably rejected Mr. Wilde's conflicting opinion, and this is a germane reason.

Plaintiff also contends the ALJ erred by stating that Dr. Schmitter "reviewed the most complete and up-to-date medical evidence record." ECF No. 11 at 21 (quoting Tr. 546). Plaintiff asserts "Dr. Schmitter only reviewed 314 pages of the 1,171 page record and did not review Tr. 837 to Tr. 1150." ECF No. 11 at 21. Dr. Schmitter reviewed all of the medical evidence that was part of the record at the time of his opinion – he reviewed Exhibits 1F-14F, or Tr. 219-529 and Tr. 820-23. While this is "only 314 pages of an 1,171 page record," ECF No. 11 at 21, a significant portion of the 1,171 pages consists of administrative records which are not part of a medical review. Furthermore, the ALJ did not say that Dr. Schmitter reviewed the entire medical record, but implied that comparatively ("most"), Dr. Schmitter's

opinion was based on a larger view of the record than any of the other medical opinions.[5]

Plaintiff further contends the ALJ erred by noting that Mr. Wilde is not an acceptable medical source. ECF No. 11 at 19. The ALJ noted that as an "other source" under the regulations, Mr. Wilde is not qualified to establish impairments. Tr. 545. As noted *supra*, an "other source" opinion may not establish a medically determinable impairment but may be evidence of the severity of an impairment and how it affects the ability to work. *See* S.S.R. 06-3p; 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). Notwithstanding, the regulations provide that "regardless of source," the Social Security Administration "will evaluate every medical opinion [it] receive[s]." 20 C.F.R. §§ 404.1527(d), 416.927 (2012). To the extent the ALJ intended this as a "reason" for rejecting the opinion, it is not germane. However, since the ALJ considered Mr. Wilde's opinion and provided other germane reasons for rejecting it, to the extent the ALJ erred, any error is harmless.[6]

---

[5] The court may make inferences from the ALJ's discussion of the evidence, if the inferences are there to be drawn. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

[6] The ALJ cited other legally sufficient reasons which support the ALJ's rejection of the opinion. *See e.g., Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Therefore, the outcome is the same despite any improper

Third, the ALJ found that while Mr. Wilde's opinion deserves consideration, the context of its production makes it less persuasive. Tr. 545. The ALJ concluded that the opinion was solicited by Plaintiff's counsel just before the hearing as an effort to generate evidence for this appeal. Tr. 545. In the absence of other evidence undermining the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *Lester*, 81 F.3d at 832 (citing *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or.1993)). This is not a germane reason for rejecting Mr. Wilde's opinion. While in some cases the context in which an opinion is obtained may undermine that opinion, the Court concludes that in this case, Mr. Wilde's status as a treating provider makes it reasonable for Plaintiff to solicit his opinion, even close to the hearing date. However, because the ALJ cited other germane reasons supported by substantial evidence for rejecting Mr. Wilde's opinion, any error from considering this reason is harmless.

---

reasoning. Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

Lastly, Plaintiff contends the rejection of Mr. Wilde's opinion "is even more significant" because the ALJ gave significant weight to the opinion of John Reichle, M.D. ECF No. 11 at 20. Dr. Reichle examined Plaintiff in May 2006 as follow up to a 2002 on-the-job back injury. Tr. 337-43. Dr. Reichle made detailed findings and ultimately opined that Plaintiff may be able to perform medium work after completing a multidisciplinary pain management program. Tr. 343. The ALJ gave significant weight to Dr. Reichle's opinion. Tr. 543-44.

Plaintiff argues that was improper to give Dr. Reichle's opinion significant weight because it was written two years before Plaintiff's alleged onset date and before his right arm injury. ECF No. 11 at 20. It was not improper for the ALJ to consider Dr. Reichle's opinion. ALJ's should "consider all medical opinion evidence." *Tomasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir.2008); *see also* 20 C.F.R. §§ 404.1527(c); 416.927(c) (2013) (noting that ALJ "will evaluate every medical opinion" received). Notwithstanding, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle*, 533 F.3d at 1165. The ALJ found that Dr. Reichle's physical assessment is consistent with the record. Tr. 544. As a result, even if the ALJ gave too much weight to the opinion, the outcome would be the same and the error, if any, would be harmless. As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless. *See*

*Carmickle*, 533 F.3d at 1162; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson*, 359 F.3d at 1195-97.

## C.    Step Two

Plaintiff contends the ALJ improperly found his migraine headaches are not a severe impairment. ECF No. 11 at 12-14. At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To establish a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908 (2010).[7]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. . . ." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to

---

[7] As of March 27, 2017, 20 C.F.R. §§ 404.1508 and 416.908 were removed and reserved and 20 C.F.R. §§ 404.1521 and 416.921 were revised. The Court applies the version that was in effect at the time of the ALJ's decision.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 30

do basic work activities which include: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(a), 416.921(a) (2010); SSR 85-28.[8]

The ALJ found Plaintiff's migraines are nonsevere. Tr. 536. First, the ALJ observed that Plaintiff reported having migraines since he was a child and noted he has successfully worked with them in the past. Tr. 536, 846, 874. Second, the ALJ noted that Plaintiff's migraines are treated with Imitrex which was described as helpful, and Plaintiff noted that eggs and peanuts are triggers which could be avoided. Tr. 536, 837, 842, 844, 874. The ALJ also noted later treatment notes indicate Plaintiff's headaches were improving with abortive therapy of sumatriptan immediately at onset. Tr. 536.

Plaintiff contends the ALJ's reasons for finding migraines are a nonsevere impairment are not supported by substantial evidence. ECF No. 11 at 13. First, Plaintiff asserts that although he had worked with migraines in the past, he testified

---

[8] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

that his migraines had increased in frequency. ECF No. 11 at 13 (citing Tr. 621-22). Defendant observes that Plaintiff pointed to no medical records indicating his migraines became more frequent or severe during the course of the record. ECF No. 13 at 5.

Even so, the fact that Plaintiff worked with migraines in the past may indicate that he is not disabled, but it does not show that migraines have no more than a minimal impact on his ability to work. Plaintiff testified that he would have to call in sick to work if he had a migraine because he often would not be able to get up. Tr. 622-23. He also testified that Imitrex makes him drowsy and exaggerates his pain from other impairments. Tr. 623. An ALJ must consider all of a claimant's statements regarding how the claimant's symptoms affect his daily activities and ability to work. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2011). Plaintiff's testimony indicates that migraines have more than a minimal effect on his ability to work.

Second, Plaintiff contends that the record does not support the ALJ's conclusion that treatment with Imitrex and sumatriptan means Plaintiff's migraines are nonsevere. ECF No. 11 at 13-14. The ALJ cited records indicating Imitrex was "starting to help," provided "short term relief," and was "fairly helpful." Tr. 536, 842, 844, 874. However, the ALJ overlooked other records cited by Plaintiff which indicate that Imitrex does not always work and his migraines can last for days at a time. ECF No. 11 at 13; Tr. 837 ("He took Imitrex prior to this appointment . . . Today is day 3 for this migraine.), 842 ("He woke up with a migraine headache

today.  He sees a pattern of triggers when he eats eggs or peanuts.  He ate a peanut

granola bar yesterday . . .  His migraines last 4-5 days.  He took Imitrex this morning

and it is starting to help."), 846 ("He is on day 5 of migraine headache." "[Has]

taken Imitrex – migraine off and on over that period of time.  Imitrex not helping."),

856 ("He has migraines at least twice weekly.  They sometimes last 4-5 days."), 937

("has had this [migraine] for the last 3 days and has been unable to resolve it at all.

He did take an Imitrex today, but he does not like to use Imitrex because when he

does . . . he can get even more pain"; takes Imitrex "infrequently").  These records

are not an "alternative interpretation of the evidence," ECF No. 13 at 5, they show

that migraines have more than minimal effect on Plaintiff's ability to work.

Similarly, although the ALJ noted that while the record indicates taking

sumatriptan was improving his headaches, Tr. 536, Plaintiff points out that the note

cited by the ALJ said that Plaintiff's headaches were improving but he still

experienced around ten migraines in the preceding month.  ECF No. 11 at 14; Tr.

855.  The ALJ's implication that Plaintiff's migraines are improved by medication

so that they cause no more than a slight abnormality is not supported by the record.

Additionally, Plaintiff cites the findings of Dr. Swartztrauber, a neurologist

who examined Plaintiff in January 2016.  ECF No. 11 at 13; Tr. 874-78.  Plaintiff

told Dr. Swarztrauber that he has about two headaches per week, but that he can go

several weeks in a row without one.  Tr. 874.  He reported that Imitrex is "fairly

helpful" for his headaches.  Tr. 874.  Dr. Swarztrauber opined that there are

"probably multi[ple] causes of his migraine disorder." Tr. 877. She noted that a likely cause is Plaintiff's dentition, including cavities and possible infection in his jaw and the roots of his teeth. Tr. 877. Dr. Swarztrauber noted that despite his symptoms, he has not gotten treatment for his dental problems. Tr. 877. She also opined that other sources of his headaches could be diet, medications, or multiple traumas in his life. She recommended a change in medication and then reevaluating. Tr. 877. While Dr. Swarztrauber did not assess functional limitations, her findings in combination with Plaintiff's testimony and complaints establish that migraines may be a severe impairment.

While the ALJ made a legally sufficient finding that Plaintiff's symptom claims are not entirely believable, the ALJ did not specifically address Plaintiff's migraine symptoms. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208. The ALJ noted Plaintiff's testimony about migraines, but did not discuss how any evidence undermined that testimony. Tr. 540. Defendant suggests that the ALJ's discussion of Plaintiff's migraines at step two implies the ALJ rejected Plaintiff's testimony regarding migraines. ECF No. 13 at 13-14. The court may make inferences from the ALJ's discussion of the evidence, if the inferences are there to be drawn. *Magallanes*, 881 F.2d at 755. However, because the ALJ's discussion of Plaintiff's migraines at step two was flawed, any inference that followed from that discussion is also flawed. The ALJ did not

adequately discuss the migraine evidence, so no reasonable inference can be drawn from the ALJ's discussion of that evidence.

The Court concludes Plaintiff's migraines are a severe impairment. Although the impairment is severe, it is not necessarily disabling. On remand, the ALJ should consider whether any limitations resulting from Plaintiff's migraines are established in the record, and if so, consider them throughout the remainder of the sequential evaluation.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Although the ALJ's findings regarding Plaintiff's symptom complaints and the medical opinion evidence are legally sufficient, the ALJ erred by not finding migraines are a severe impairment at step two, and by not considering migraines throughout the sequential evaluation. On remand, the ALJ should consider the effect, if any, of migraines throughout the sequential evaluation. Testimony from a medical expert may be helpful, if the ALJ determines that is appropriate. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** August 8, 2019.

s/ Rosanna Malouf Peterson
ROSANNA MALOUF PETERSON<br>United States District Judge